You just wait one second while I get my own stuff in order. Happily. I'm ready. I'm in police support, Anne McClintock at the Federal Defender's Office on behalf of Mr. Benz. There are two questions in the alternative that we've raised in this briefing, one concerning the legal application of the Assimilated Crimes Act and the other regarding the Rule 11 and constitutionality. Why are they in the alternative? They don't seem to me to be in the alternative. Well, I think if we're correct about the Assimilated Crimes Act question, you don't have to reach the first one or the first question is answered automatically. But the implication of the first question is that the guilty plea was involuntary. I was wondering about that. Why do you want the guilty plea withdrawn? But that would be the implication of it and it would not be alternative. Well, I guess they're my – I guess what I meant is that if he is correct about his interpretation of the Assimilated Crimes Act, permitting the district court or the magistrate court to – And he withdraws the second question. He withdraws the second question. That would be a better phrasing for it. Thank you. Okay. Okay. I would like to start with the Assimilated Crimes Act unless the Court wants to go in a different direction. There was some disagreement in the briefing regarding the review. I think it's clear that de novo review is applicable because if you take a look at the standards governing that, that there's no specific talisman. It's sufficient to preserve an issue for appeal if it's been presented to the magistrate judge. It was presented to the magistrate judge before the plea was taken regarding the application. And then the effort to make the specificity of the objection got sidetracked with actually taking the plea. So it was presented to the magistrate judge. You look like you have a question. No. Go ahead. I will interrupt when I do. Thank you. So turning to the question of – the legal question of how you decide what like punishment is under the Assimilated Crimes Act. And I think that's where both the magistrate judge and then in turn District Court Judge Englund erred in their legal analysis of the ACA. This Court's decisions in Bosser and Silva – Silva, I'm not sure which is the pronunciation. Following the Supreme Court's interpretation of the ACA clearly state that the approach the Court is to take is a common-sense one where the goal is comity to what the State's – As I understand it, under the State law, aside from all the other issues here, the work furlough program is only available if the sheriff or if the county creates it. Is that right? Right. And Yuba County has such a program. That's what I'm asking. Is it in the record that Yuba County does have such a scheme? It's in the briefing. There's not a citation to it. I think that was the common assumption by everyone. I think that's one of the things that Judge Englund erred on in assuming – he went on a short discourse about we don't know what – this is something that's inconsistent with different counties. But I think as a practical matter, Yuba County does have such a program. And then how is it implemented? Is it implemented by the judges or is it implemented after conviction by the sheriff or the jailer? I think that's a good question, but I don't think it's the question that answers the ACA application. Answer the question. It is a program that is administrated by the sheriff's department, so it would go through the sheriff's department as to what the project would be, whether it would be something supervised by a sheriff, whether it would be through a nonprofit, whether it was manual labor. Whether it happens at all. Or whether it happens at all. Okay. And some of the factors, as Judge Englund mentioned, I think he's accurate about those. He has that experience as a former Superior Court judge. It depends on the individual's situation. If he's got a history of walking away or failure to appear, he's probably not a good candidate. The problem in this case, and why I don't think we get that far in the analysis, is that the magistrate judge didn't realize or did not understand that he had the discretion to consider those factors in the particularities of this case. So the record wasn't developed on those facts. I think that's what needs to happen. Well, your ultimate problem, then, is how like is like? Because you're asking for a determination, A, by the judge, not by the Bureau of Prisons. And you're asking for, not for work furlough because it doesn't exist, but for something else. Well, that's the real legal question. And that's why I think we'll come back to the original point I was trying to make about Bosser and Silva, and it's following the Supreme Court precedent before. Is it supposed to be a common-sense approach? Is it supposed to be flexible? And the goal is not to duplicate what the State does and the way the State does it. For example, in some of the DUI cases where the Federal court was trying to duplicate precisely what the State practice was by suspending people's driver's licenses. That goes too far. I do have a question, then. Yes, ma'am. Can you cite to any authority or occasion in which a California State judge has imposed a sentence of work release under 4024.2A? I believe that we cited Wills. There's a case, People v. Wills, that talks about ‑‑ I didn't find one in the context of this particular driving or suspended license. I couldn't find one. Well, no, I couldn't find one. I did look. And I think the practicality is, given the sentencing lengths and terms in these cases, they're not the type of thing that end up in published opinions. If you look at the plain statutory language of 2044.2, which is in the government's appendix, there's no limitation on the type of offense. So I did find offense involving cocaine possession. I did find offenses, I think, in its Wills. And I don't have the citation at the podium, but I can find it or send a letter brief that involved the DUI. Thank you. You've answered my question. So I think the ‑‑ Let me go back to the alternatives problem. If we were to disagree with you on this issue, do you want us to reach the other question? Do you want to vacate the guilty plea? I don't understand why that ‑‑ I mean, I think you have a very strong argument on the other issue. But do you really want us to decide that? We do. You do. If, I mean, I'd much prefer ‑‑ What's the function of that? You withdraw the guilty plea and then what? Well, he's back at square one. And then he has to decide, given the context of what defenses he may raise, whether he wants to go to the hassle and dangers of going to trial. This is a context where we ‑‑ it's not in the record, but I know from reviewing our file, that he was offered the plea that he rejected, that the sentencing plea that he ‑‑ I'm twisting my sentence. He was offered as a plea agreement the sentence he received and he rejected it. That's not clear from the record, but it is clear from my file that that happened. So I think it's clear from his ‑‑ But if he can get work for a loan, he doesn't care. Well, I think it's clear from ‑‑ He deserves it. Yes. And I think the Rule 11 in the constitutionality question is what the actual physical consequences as far as punishment. Does he have to go to jail or does he have to come up with some other alternative, whether it's in fine? And particularly if you keep in mind, and it goes a little bit back to some of the discussion we had earlier about juries in the other case, we're talking about a lay person who has minimal contact with the law. He's had a prior DUI suspension. So it was from years and years ago. And it is important both from a constitutional point of view. Boykin and his predecessors explained that. And I think Judge Nelson's opinion in Covian-Sandoval reminds us that it is crucially important that the defendant before he waives his rights and pleads guilty, that he understand the consequences. And this is unlike some of the rights being waived in Vaughn and Dominguez-Benitez, if I had that the right way around. This is a core question of what's going to happen to him. And it is clear from the record that when he pled guilty, it was an open question as to whether mandatory, whatever the language, the argo that the law student for the government was trying to use about the 10 days, that it was in dispute. The government wanted 10 days. The defendant's attorney wanted or counsel wanted a fine. And there are other alternatives that didn't get discussed at that point that were raised with the district court judge. So I think if we are wrong about our interpretation of the Assimilated Crimes Act, I think it is crucially important that you reach the Rule 11. Typically, you look at it first as a Rule 11, you know, a rule violation, but I think there is also in here a fundamental constitutional violation of the sort that is mentioned and I think is one of the footnotes in Dominguez that is at issue. I only have a minute and a half, and I'd reserve unless you have other questions. Thank you. Ms. Spangler. I'm Samantha Spangler, Assistant United States Attorney. And I was supervising the misdemeanor unit of the U.S. Attorney's Office at the time that this case was handled in court. I don't recall being in court that day, but nonetheless, I was the supervisor at the time. And I think it's really important for this Court to focus on what actually happened before the magistrate judge, because that's what this Court is supposed to review, not what the district judge said, except to the extent that that can help to inform the magistrate judge's process. Are you now discussing the guilty plea or the ACA issue? On both issues, Your Honor. Okay. I think that on the first issue, which is the Rule 11 violation, the government, as you know, concedes that there was error, concedes that it was plain, and concedes that it's the type of error that affects the defendant's substantial rights. Our position is that it doesn't seriously affect the fairness, integrity, and public reputation of the proceedings before the magistrate court because of the distinction between our case and the Pena case, where, in that case, the Court said that neither the court nor the prosecutor had advised the defendant of the nature of the charges. Here, of course, we're not dealing with the nature of charges. We're dealing with the statutory mandatory minimum. And that was addressed by the prosecutor. And as Ms. McClintock has already indicated. Well, it was addressed by the prosecutor at the beginning in coded language and not in the content and not directed at the defendant in any way that we have any idea whether he understood it. Well, if the matter had been to take, for instance, on the Pena case, the advisement of the type of the charges, if the prosecutor states the words, then that's what's important. As in, if this was explained then at the end of the Santeen hearing, the defendant said, I should not go to prison. I understand that point, that the defense counsel did not understand. I understand that it was a mandatory minimum. Well, except that experience tells us that defendants make this argument for leniency all the time, even when there's a statutory minimum sentence of 5 years, 10 years in drug cases. I've been prosecuting for 13 years. I've heard this routinely. Both defendants and their family members make lenience pleas to the court at sentencing even though there's a minimum sentence, a statutory minimum sentence, and even though the court is imposing no more than the minimum. So I don't think that their argument washes. Can you explain succinctly why you think this doesn't meet the fourth prong of Alano? Why I think what? Why you think this does not affect the fairness, et cetera, et cetera. I think that inquiry looks at the statement of the prosecutor or something else. Primarily because of the statement of the prosecutor, but also because Mr. Benz did know about the minimum 10 days, because that had been offered in the plea agreement, which Ms. McClintock refers to, the government the what happened here was the defendant pled straight up without a plea agreement, and that's because he didn't want to agree to the imposition of the 10 days as a mandatory minimum or otherwise. And so he thought. If the sentence were 10 years, mandatory minimum instead of 10 days, would you still be making the same argument? I would. And that's because the prosecutor discussed the mandatory minimum and the defendant comes into court. Yes, it's important that this be set on the record. That's how we get through the first three prongs of the plain error analysis. But when we get down to the bottom prong, that's objectively looking at the proceedings from the standpoint of citizens. So I guess you're relying on two things. One is this sort of quick statement at the outset. And the other is the plea agreement. Is that in the record? There was no plea agreement. I mean, the absence of a plea agreement, the fact that he had been offered this and rejected it. Well, the absence of a plea agreement is set forth at the beginning of the transcript. You seem to me to be relying on the fact that he knew there was a mandatory minimum because he had been offered a plea agreement which stated the mandatory minimum. But do we know that? We know that because defense counsel and I know it. You know it, but do I know it? Well, to the extent they can go outside the record, I imagine I can. I understand. But you both can't. That's the problem. That's right. The statute does not show that. But from the standpoint of the fairness of the judicial proceedings as perceived by the public, the prosecutor does make a statement about the minimum sentence. And that's good enough, according to the court's analysis in Pena, if the government had made the statement in that case about the nature of the charges, that would have been good enough, or could have been good enough, it doesn't say because it doesn't reach that issue, to overcome the impact, the public appearance of the fairness of the proceedings. And here the defendant did know of the statutory minimum sentence, and the prosecutor did mention it. It wasn't just completely ignored in the proceeding, in the Rule 11 proceeding, as was the case in Pena. Moving on to the second issue, the – I think there again we have to look at what actually happened in the district court. The defendant did not make an argument that he should receive work release or community service or anything else. All he argued through his attorney was that the court did not have to impose the mandatory minimum. Well, even when you get to, okay, let's bring in this whole work release project that's handled through the State court and how they do it, we understand now that the court does impose the 10-year mandatory or, I'm sorry, 10-day mandatory minimum, and then it's either recommends or doesn't recommend that the person do it through the work project, and then it's up to the sheriff to decide whether they do or not. So the court still imposes the 10-day mandatory minimum, and the defendant only argued before the magistrate judge that the magistrate judge did not have to impose the mandatory minimum sentence, and they provided no authority for that whatsoever. Now, I think that when you come down to looking at this case from the standpoint of, you know, did the magistrate judge err, either on a de novo review or on a plain error review or on an abuse of discretion, however you look at it, the magistrate judge was presented with an issue. He decided that issue, and we moved on. Defense counsel could have raised this argument that they raised, but they didn't. I mean, they didn't raise it until it went to the district judge. There's something that's not discussed in either of the briefs, and that's the sentencing guidelines, which do not apply in this case because there's no – because it's a class B misdemeanor and there's no real provision. But by analogy, under 5C1.1e, there's the ability for the court to impose some kind of substitute confinement, substitute punishment for incarceration. But those involve things like community confinement or intermittent confinement or even home detention. But none of them – I do not – I do not think, and frankly, I'm going on my memory. I didn't have a chance to look up this point in your library before coming in today. But I don't think that community service is one of the alternatives to incarceration that's identified in that guideline. And I know that this Court has addressed that issue before, whether halfway house placement is the same as a confinement and has discussed whether community service can be substituted for confinement. And then there's the whole issue of whether this Court can impose or the magistrate court can impose an obligation on the jailer to – for any particular program. And I think that's a fundamental distinction between some of the Assimilative Crimes Act cases. In cases where the alternative to the punishment that's available in the State court is one that does not interfere with a coordinate branch of government's obligations, such as to allow a defendant to defer prosecution or defer entry of judgment, then the court has been – the courts, plural, have been willing to allow for that like punishment. And similarly, supervised release instead of probation. But when it comes down to the penological policies of, for instance, the Bureau of Prisons in deciding whether a person has reached parole eligibility or not, those are left to the discretion of the Bureau of Prisons. And to the extent that there's a State statute on that point, it is not assimilated. And the government's contention is that's exactly where we are with this. Work release is just a manner of imposing the execution of the sentence. And this Court isn't – doesn't have the authority, really, to impose that on the Bureau of Prisons. And to the extent the defendant is now arguing that he should have gotten community service instead of 10 days in jail, he didn't make that argument to the magistrate, Judge. Okay. Thank you very much, counsel. Thank you for your argument. Your Honors, I would disagree. Again, this is outside the record. But our notes don't show that Mr. Banz independently understood that the 10 days that he had. It's really not useful for us to know what's outside the record. What about the question of exhaustion of the ACA issue? What was raised? It does appear that what was raised before the magistrate was – the magistrate raised the question of whether he could grant probation. Did anybody ever ask him to do anything other than consider probation? Well, the argument that was being put forth was – this is the first page of tab 3 – was that it was appropriate just to do a fine. This is when the law student for Mr. Banz interrupted. Is that what's what? We're seeking just a fine. Appropriate penalty in this case is just a fine. Okay. But this whole discussion about the work furlough possibility never came up. Right. I agree. It's not – 2042.2 was certainly not mentioned. We could have done a better job and all those other things. But if you actually look carefully at the context in which the discussion about alternative sentencing was presented, the role of the Assimilated Crimes Act was that the magistrate judge was subject to – before the magistrate judge, it then got sidetracked onto a discussion about the 10 days. This is where the law student for the government's legal explanation, his argo, was insufficient to give notice going to the Rule 11 in the constitutional question. And then the judge skipped forward to starting to take the Rule 11 colloquy. And so at that point, the magistrate judge, and I see my time's up, has cut off further discussion and never makes a ruling. And this is where I think he's fundamentally erred. And whether – I think this satisfies plain error, if that's the way that you wish to analyze it, is he's fundamentally erred in deciding and telling the defendant at this point, before he goes through the plea colloquy, 10 days means 10 days or 10 days might mean 10 days you still want to plead and we'll reserve what I'm able to do later. And at this point, Mr. Benz is going into a non-understanding. Thank you very much, counsel. Thank you. Thank you, counsel, for a useful argument. The case of United States v. Benz is submitted. We will go on to United States v. Sadler.
judges: Bright , D.W. Nelson, Berzon